IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRVIN MUCHNICK,<br><br>    Plaintiff,<br><br>v.<br><br>DEPARTMENT OF HOMELAND SECURITY,<br><br>    Defendant._____/ | No. CV 15-3060 CRB<br><br>**ORDER DENYING SUMMARY JUDGMENT AND REQUIRING A SUPPLEMENTED VAUGHN INDEX** |

Now before the Court is the Department of Homeland Security's ("DHS's") motion for summary judgment on Plaintiff Irvin Muchnick's Freedom of Information Act ("FOIA") claim. See Motion (dkt. 15). The parties agree that this FOIA claim involves about 40 documents spanning around 80 pages. See generally Vaughn Index (dkt. 16); Opp'n (dkt. 17) at 8. DHS has thus far turned over four documents to Muchnick and claims that the remaining 40 documents are covered in their entirety by various FOIA exemptions. See generally Motion; Vaughn Index and Eggleston Decl. (dkt. 16). The Court finds the motion suitable for resolution without oral argument, see Civil Local Rule 7-1(b), and for the following reasons, concludes that DHS's Vaughn Index and showing on segregability are insufficient. The Court thus DENIS the motion without prejudice to DHS curing these deficiencies and VACATES the hearing set for Friday, February 26, 2016.

**I.     FACTUAL BACKGROUND**

Muchnick is an accomplished freelance journalist who is currently investigating sexual abuse in organized amateur sports. See Muchnick Decl. (dkt. 17-1) at 1. As part of his research, Muchnick is investigating "improprieties or negligence" on the part of DHS, including its United States Citizenship and Immigration Services ("USCIS") subdivision, in allowing George Gibney—an Irish-national swimming coach accused of sexual abuse—to enter and reside in the Unites States. See Muchnick Decl. at 1–2, Exs. A–C.

In February 2015, Muchnick made a FOIA request for records in the possession of USCIS that included "Visa and green card files on George Gibney, an Irish national living in Altamonte Springs, Florida." See Eggleston Decl. at 4. DHS conducted a search and identified 102 pages of responsive documents. Id. These documents all appear to be part of Gibney's Alien File ("A-file"), which contains the official record materials for Gibney that DHS created under the Immigration and Nationality Act. See id.; 76 Fed. Reg. 70739-01, 2011 WL 5519984 (Nov. 15, 2011). According to DHS, "the A-file may contain documents and information that originate from USCIS, including the processing and adjudication of applications and petitions submitted for citizenship, asylum, and other immigration benefits," and it may also include documents "that originate from U.S. Immigration and Customs Enforcement's law enforcement activities, and U.S. Customs and Border Protection's inspection, border protection, and law enforcement processes." See id.; Motion at 3.

DHS produced four pages of these responsive documents to Muchnick and withheld 98 pages based on a number of FOIA exemptions. See Eggleston Decl. at 4. The parties now agree that this action involves about 40 withheld documents spanning around 80 pages. See generally Vaughn Index (dkt. 16); Opp'n (dkt. 17) at 8. DHS produced a Vaughn Index and a declaration from DHS employee Jill Eggleston to justify withholding these 98 pages of responsive documents, see Vaughn Index and Decl. (dkt. 16), and DHS moves for summary judgment, arguing that several FOIA exemptions cover the disputed documents, see Motion.

//

2

## II. LEGAL STANDARD

"The Freedom of Information Act was enacted to facilitate public access to Government documents." United States Dep't of State v. Ray, 502 U.S. 164, 173 (1991). The purpose of the Act is "'to pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny.'" Id. "Consistently with this purpose, as well as the plain language of the Act, the strong presumption in favor of disclosure places the burden on the agency to justify the withholding of any requested documents." Id.

Summary judgment is proper when "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). An issue is "genuine" only if there is a sufficient evidentiary basis on which a reasonable fact finder could find for the nonmoving party, and a dispute is "material" only if it could affect the outcome of the suit under governing law. See Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49 (1986). A principal purpose of the summary judgment procedure "is to isolate and dispose of factually unsupported claims." Celotex Corp. v. Catrett, 477 U.S. 317, 323-24 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" Matsushita Elec. Ind. Co. v. Zenith Radio, 475 U.S. 574, 587 (1986).

In a FOIA case, the court may grant summary judgment on the information provided in affidavits or declarations when the affidavits or declarations describe "the documents and the justifications for nondisclosure with reasonably specific detail, demonstrate that the information withheld logically falls within the claimed exemption, and are not controverted by either contrary evidence in the record nor by evidence of agency bad faith." Military Audit Project v. Casey, 656 F.2d 724, 738 (D.C. Cir. 1981). Such affidavits or declarations are accorded "a presumption of good faith, which cannot be rebutted by purely speculative claims about the existence and discoverability of other documents." SafeCard Serv., Inc. v. SEC, 926 F.2d 1197, 1200 (D.C. Cir. 1991) (omitting citation and internal quotation marks).

//

## III. DISCUSSION

DHS argues that three FOIA exemptions justify it in withholding the forty disputed documents here: exemptions (b)(6),[1] (b)(7)(C),[2] and (b)(7)(F).[3] See Motion at 16–20. DHS supports this argument with a Vaughn Index and a declaration from DHS employee Jill Eggleston. See Vaughn Index and Decl. (dkt. 16). DHS further argues that none of the information contained in the disputed documents is "reasonably segregable" from exempt information, and thus DHS may withhold the documents in their entirety. See Motion at 20–22. For the following reasons, the Court concludes that DHS's Vaughn Index and segregability showing are insufficient and DENIS the motion without prejudice.

### A. Deficiencies in DHS's Vaughn Index and Supporting Declaration

"FOIA's strong presumption in favor of disclosure means that an agency that invokes one of the statutory exemptions . . . bears the burden of demonstrating that the exemption properly applies to the documents." Yonemoto v. Dep't of Veterans Affairs, 686 F.3d 681, 692 (9th Cir. 2012). A Vaughn Index "must identify each withheld document, describe its contents to the extent possible, and give 'a particularized explanation of why each document falls within the claimed exemption.'" Id. at 695. The Vaughn Index "should reveal as much as possible as to the nature of the document, without actually disclosing information that deserves protection." Id. "The purpose of the index is to afford the FOIA requester a meaningful opportunity to contest, and the district court an adequate foundation to review, the soundness of the withholding." Wiener v. FBI., 943 F.2d 972, 984 (9th Cir. 1991).

---

[1] FOIA Exemption 6 protects "personnel and medical files and similar files[,] the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6); Eggleston Decl. ¶14. "[T]he primary concern of Congress in drafting Exemption 6 was to provide for the confidentiality of personal matters." See Department of Air Force v. Rose, 425 U.S. 352, 375, n. 14 (1976) (citing U. S. Dept. of State v. Washington Post Co., 456 U.S. 595, 599-600 (1982)).

[2] FOIA Exemption 7(C) protects records or information compiled for law enforcement purposes when such disclosure "could reasonably be expected to constitute an unwarranted invasion of personal privacy." See 5 U.S.C. § 552(b)(7)(C).

[3] FOIA Exemption 7(E) protects records from disclosure compiled for law enforcement purposes to the extent that such disclosure "would disclose techniques and procedure for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure would reasonably be expected to risk circumvention of the law." See 5 U.S.C. § 552(b)(7)(E).

4

1    The Vaughn Index here largely fails to "describe [each withheld document's] contents
2 to the extent possible" and also fails to provide a "<u>particularized</u> explanation of why each
3 documents falls within the claimed exemption." <u>See</u> <u>id.</u> at 695 (emphasis added).  Apart
4 from boilerplate recitations of FOIA exemption law, the DHS's index almost exclusively
5 repeats a few general asserted grounds for withholding documents.[4]  <u>See, e.g.</u>, Vaughn Index
6 at 4, 7, 10.  It also identifies some basic information, like social security numbers, medical
7 information, and personal contact information, that courts have redacted from documents
8 otherwise disclosed under FOIA.  <u>See, e.g.</u> <u>id.</u> at 1; <u>Painting Indus. of Hawaii Mkt. Recovery</u>
9 <u>Fund v. U.S. Dep't of Air Force</u>, 26 F.3d 1479, 1486 (9th Cir. 1994).  These general
10 explanations for DHS's decision to withhold the documents here fall short of the standard
11 established by the Ninth Circuit in <u>Wiener v. FBI</u>.  <u>See</u> 943 F.2d at 984.  The Ninth Circuit
12 found insufficient the Vaughn Index the FBI prepared in response to a FOIA request about
13 John Lennon, and explained the level of detail that DHS should have provided in its index:

> Without violating the privacy interests of the informant or the third party, the FBI could have stated that [a specific government form] recites information provided by a third party to an FBI informant detailing the third party's knowledge of several activists and protest activities planned at the 1972 Republican National Convention, discussing the possibility that John Lennon would organize a series of concerts to raise money to finance the activity, and describing rivalries and jealousies within activist organizations.

19 <u>Id.</u> at 984.  Boilerplate explanations for withholdings—like those provided by DHS
20 here—are improper, and efforts must be "made to tailor the explanation to the specific
21 document withheld."  <u>See</u> <u>id.</u> at 978–79.  DHS's declaration supporting the index provides no
22 additional details.  <u>See</u> Eggleston Decl. at 5 ("With regards to the information that was
23 withheld from the Agency's response, attached is a 'Vaughn' index identifying and

---

[4] For example, the index largely repeats the following phrases: (1) "the public disclosure of this document would reveal the results of a background check," (2) "the disclosure of this document would reveal the nature of a requested immigration benefit," (3) this document "was prepared in the course of administering the Immigration and Nationality Act" and "pertains solely to third parties" so "the disclosure of this information will not enhance the public understanding of how the Agency performs its statutory duties," or (4) the "information redacted from this document illustrates the specific types of information sought by immigration officials in conducting background checks for applicants for immigration benefits."  <u>See, e.g.</u>, Vaughn Index at 4, 7, 10.

5

United States District Court / For the Northern District of California

describing each document in which information was withheld, specifying the particular exemption under which the information was withheld, and explaining how the exemption applies to the information that was withheld.").

The Court thus concludes that DHS's Vaughn Index is deficient under Ninth Circuit case law and DENIES the motion for summary judgment at issue here without prejudice to DHS producing and filing an adequately detailed Vaughn Index. See Wiener, 943 F.2d at 984. DHS may also provide the level of detail required by Wiener in a declaration regarding the withheld documents, including whether that information has already been released publicly and whether exemptions apply that would overcome the presumption in favor of disclosure. See Ray, 502 U.S. at 173. Without that context, the Court cannot assess DHS's withholdings. See Vaughn v. Rosen, 484 F.2d 820, 828 (D.C. Cir. 1973) ("Given more adequate, or rather less conclusory, justification in the Government's legal claims . . . a more adequate adversary testing will be produced.").

**B.     Deficiencies in DHS' Showing on Segregability**

FOIA requires that "[a]ny reasonably segregable portion of a record shall be provided to any person requesting such record after deletion of the portions which are exempt under this section." 5 U.S.C. § 552(b). All "non-exempt portions of a document must be disclosed unless they are inextricably intertwined with exemption portions." See Mead Data Central, Inc. v. U.S. Dept. of Air Force, 566 F.2d 242, 260 (D.C. Cir. 1977). District courts have an affirmative obligation to consider the issue and make segregability findings. See Trans-Pacific Policing Agreement v. Custom Serv., 177 F.3d 1022, 1028 (D.C. Cir. 1999).

DHS argues that none of the information in the 40 documents at issue here contains any information that is reasonably segregable from exempt information. To support this sweeping claim, DHS states that

> the mere disclosure of which immigration forms are included in the A-file would disclose private information pertaining to Mr. Gibney that warrants protection under the law. If DHS is required to disclose non-exempt segregable information contained within the A-file, Plaintiff and third parties would know information that would be unique to the individual alien, including: (1) the specific law enforcement actions that DHS may have instituted against him; (2) the different immigration benefits or specific relief that he may have requested; (3) allegations that may have been raised against

him; (4) or other actions and information that is only specific to him, to whom the A-file belongs.

See Motion at 20–21. DHS, however, cites no controlling authority and no on-point persuasive authority indicating that information contained in an "A-file" is "categorically exempt" from disclosure or from a document-by-document segregability analysis, and no authority indicating that those four types of information are categorically exempt. Cf. Yonemoto, 686 F.3d at 695 ("[C]ategorical exemptions are rarely proper under the FOIA.").

Between DHS's failure to segregate any information and its inadequate Vaughn Index, the Court cannot approve its decision to entirely withhold the 40 documents in dispute here. See Wiener, 943 F.2d at 988 ("It is reversible error for the district court to simply approve the withholding of an entire document without entering a finding on segregability, or the lack thereof, with respect to that document . . . .The court on remand must make a specific finding that no information contained in each document or substantial portion of a document withheld is segregable."); Hronek v. Drug Enforcement Agency, 16 F. Supp. 2d 1260, 1269 (D. Or. 1998), aff'd 7 F. App'x 591 (9th Cir. 2001) ("this court, like the plaintiff, must look exclusively to the agency's submissions for the factual basis necessary to make the required segregability findings."). The Court thus DENIES DHS's motion without prejudice.

## IV. CONCLUSION

The Court finds this motion suitable for resolution without oral argument, see Civil Local Rule 7-1(b), and for the foregoing reasons, concludes that DHS's Vaughn Index and showing on segragability are insufficient. The Court thus DENIES the motion without prejudice, ORDERS that DHS submit an adequate Vaughn Index and review segregability in light of that Index within (60) days, and VACATES the hearing set for February 26, 2016.

**IT IS SO ORDERED.**

Dated: February 24, 2016

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE