IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| IRVIN MUCHNICK,<br><br>              Plaintiff,<br><br>    v.<br><br>DEPARTMENT OF HOMELAND SECURITY,<br><br>              Defendant. | No. CV 15-3060 CRB<br><br>**TENTATIVE ORDER ON MOTION FOR SUMMARY JUDGMENT** |

George Gibney used to coach the Irish Olympic swim team. He immigrated to the United States in the early 1990s and has lived here ever since. He also allegedly sexually abused young female swimmers throughout the 1960s and 1970s – and perhaps since. Plaintiff Irvin Muchnick wants to know why Defendant DHS let Gibney enter the country and remain here. He filed this Freedom of Information Act action to find out.

**I.     BACKGROUND**

   **A.     Statutory Framework**

Congress enacted the Freedom of Information Act ("the FOIA") to "pierce the veil of administrative secrecy and to open agency action to the light of public scrutiny." U.S. Dep't of State v. Ray, 502 U.S. 164, 173 (1991). The FOIA sets a "strong presumption in favor of disclosure" and puts the burden on the government to justify withholding requested documents. Id. To avoid disclosure, a document must fall within one of the FOIA's "narrow" exemptions. Id. Three concern the Court here.

First, Exemption 6 shields "personnel and medical files and similar files" if disclosing them would result in "a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6). Second, Exemption 7(C) shields information "compiled for law enforcement purposes" if disclosing it "could reasonably be expected to constitute an unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(7)(C). Third, Exemption 7(E) shields information "compiled for law enforcement purposes" if disclosing it would reveal either "guidelines for law enforcement investigations or prosecutions" that "could reasonably be expected to risk circumvention of the law," or "techniques and procedures for law enforcement investigations or prosecutions."[1]  5 U.S.C. § 552(b)(7)(E).

### B. Factual Background

This case starts with the sordid history of the Irish Amateur Swimming Association, the now-defunct governing body for the sport in Ireland. In 1992, Frank McCann – a team manager throughout the 1980s – confessed to murdering his wife and child to prevent them from discovering that he had fathered a child with an underage swimmer. Frank McCann: "Consummate Actor" And Calculating Killer, The Irish Times (Aug. 17, 1996).[2] An Irish jury convicted him of murder in 1996. Id.

In 1993, Irish authorities began investigating Derry O'Rourke, a former coach of Ireland's Olympic swim team. Former Irish Swimming Coach Admits Sexual Abuse of Girls, The Irish Times (January 30, 1998).[3] For years, O'Rourke sexually abused young female swimmers in an infamous "chamber of horrors." Id. He ultimately pleaded guilty to 29 counts of sexual abuse in 1998. Id.

George Gibney got away. Another former Irish Olympic coach, Gibney was charged with multiple counts of sexual assault for a string of abuse dating back to the 1960s. See

---

[1]  Hamdan v. U.S. Dep't of Justice, 797 F.3d 759, 778 (9th Cir. 2015), made clear that the government must show that disclosure risks "circumvention of the law" for law enforcement "guidelines" but not "techniques" or "procedures."

[2]  http://www.irishtimes.com/culture/frank-mccann-consummate-actor- and-calculating-killer-1.77547

[3]  http://www.irishtimes.com/news/former-irish-swimming-coach- admits-sexual-abuse -of-girls-1.129869

2

Muchnick Decl. Ex. C (dkt. 17-4). He got off in 1994, when the Irish Supreme Court ruled that the statute of limitations had run. See id. Gibney then left Ireland, making his way to Scotland and then the United States.[4] Id. He now reportedly lives in Florida. Id.

Plaintiff Irvin Muchnick is a freelance journalist investigating sexual abuse in amateur sports. Quite naturally, he wants information about Gibney. See Muchnick Decl. (dkt. 17-1) ¶ 2. He hopes to uncover how American authorities allowed an alleged sexual predator to enter and reside in the United States despite the scandal swirling around him in his native Ireland. Id. ¶ 3. He also suspects that the American Swimming Coaches Association greased the wheels for Gibney's relocation. Id.

### C. Procedural History

Muchnick requested documents under the FOIA from United States Citizenship and Immigration Services ("USCIS"), a subdivision the Department of Homeland Security ("DHS"), in February 2015. See Muchnick Decl. Exs. A-C (dkt. 17-1, 2 & 3). He asked for visa and green card files on Gibney. See Eggleston Decl. (dkt. 16) at 4. DHS conducted a search and identified 102 pages of responsive documents in Gibney's Alien File ("A-file"). See id. A-files contain, among other things, documents surrounding "the processing and adjudication of applications and petitions submitted for citizenship, asylum, and other immigration benefits." See 76 Fed. Reg. 70739-01 (Nov. 15, 2011).

DHS produced four pages and withheld the other 98 pages under several FOIA exemptions. See Eggleston Decl. at 4. DHS moved for summary judgment and created a Vaughn Index to justify the withholding. See Mot. (dkt. 15) at 16-20. Because the Vaughn Index did not meet Ninth Circuit standards, the Court denied the motion and ordered DHS to produce a better one. See Order (dkt. 21) at 6-7. The Court also ordered DHS to demonstrate why it could not redact exempt portions of withheld documents and disclose the rest. See id.

---

[4] Public reports suggest that Gibney was arrested in 1993 and prosecuted until 1994, and only then left Ireland for Scotland and then the United States. See, e.g., Muchnick Decl. Ex. B (dkt. 17-2). But it seems possible he left Ireland for good as early as 1992. Whatever the truth, it does not affect the Court's analysis.

3

With supplemental <u>Vaughn</u> Index in hand, DHS has again moved for summary judgment. Sec. Mot. (dkt. 30) at 1. The dispute now concerns twenty documents spanning forty-three pages. <u>Id.</u> at 2; Opp'n (dkt. 32) at 8. DHS has provided the Court with unredacted copies for <u>in camera</u> review. At the motion hearing, the Court agreed to submit this tentative order to help the parties reach a resolution. See Hr'g Min. (dkt. 35).

## II.   LEGAL STANDARD

The Court may grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. Proc. 56(a). A principal purpose of summary judgment "is to isolate and dispose of factually unsupported claims." <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323–24 (1986). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict" for either party. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). A fact is material if it could affect the outcome of the suit under the governing law. <u>Id.</u> at 248–49 (quoting <u>First Nat'l Bank of Ariz. v. Cities Serv. Co.</u>, 391 U.S. 253, 288 (1968)). Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment. <u>Id.</u> at 249–50 (citations omitted). To determine whether a genuine dispute as to any material fact exists, the court must view the evidence in the light most favorable to the non-moving party. <u>Id.</u> at 255.

## III.   DISCUSSION

### A.   The Government's Supplemental <u>Vaughn</u> Index

<u>Vaughn</u> Indexes exist because the "lack of knowledge by the party seeking disclosure" in a FOIA case "seriously distorts the traditional adversary nature of our legal system." <u>Vaughn v. Rosen</u>, 484 F.2d 820, 824 (D.C. Cir. 1973). DHS compromised the adversarial process when it filed its initial, inadequate <u>Vaughn</u> Index. See <u>Wiener</u>, 943 F.2d 972, 978 (9th Cir. 1991). Its supplemental <u>Vaughn</u> Index, in all candor, fares little better.

No matter. Normally, <u>in camera</u> review "is not an acceptable substitute for an adequate <u>Vaughn</u> Index" because it "does not permit effective advocacy." <u>Wiener</u>, 943 F.2d

4

at 979. But here, for the reasons discussed below, the Court is prepared to rule (largely) in Muchnick's favor. Concerns about the adversary system are therefore moot.

### B. Exemptions 6 and 7(C)

Exemptions 6 and 7(C) both require the Court to balance the affected party's privacy interests – here Gibney's – against the public's interest in the information. See Nat'l Archives & Records Admin. v. Favish, 541 U.S. 157, 171 (2004). But before reaching that question, the Court must determine whether the withheld documents qualify as "personnel and medical files and similar files" under Exemption 6 or information "compiled for law enforcement purposes" under Exemption 7(C). See 5 U.S.C. §§ 552(b)(6), (7)(C).

#### 1. Threshold Questions

The phrase "similar files" in Exemption 6 extends to most any record "containing information that applies to particular individuals." See Kowack v. U.S. Forest Serv., 766 F.3d 1130, 1137 (9th Cir. 2014) (citation omitted). It therefore covers "files containing citizenship information on specific individuals," like the A-File at issue here. See id.

Exemption 7(C) – and for that matter Exemption 7(E) – also extends to A-Files. DHS must show only a "rational nexus" between its law enforcement duties and Gibney's A-File. See Wiener v. F.B.I., 943 F.2d 972, 985-86 (9th Cir. 1991). Most courts hold that A-files, which are "compiled for adjudicative and enforcement purposes" within DHS's statutory authority, meet this test. See, e.g., Gosen v. USCIS, 75 F. Supp. 3d 279, 288-89 (D.D.C. 2014); Mezerhand de Schnapp v. USCIS, 67 F. Supp. 3d 95, 100 (D.D.C. 2014); Techserve Alliance v. Napolitano, 803 F. Supp. 2d 16, 29 (D.D.C. 2011); Skinner v. U.S. Dep't of Justice, 806 F. Supp. 2d 105, 113-16 (D.D.C. 2011).

Muchnick counters that Wiener, 943 F.2d at 985-86, compels a contrary result. See Opp'n at 17. Not so. Wiener held that the FBI did not establish a "rational nexus" between a legitimate law enforcement purpose and documents compiled about John Lennon's anti-Vietnam War activities. See 943 F.2d at 985-86. The dispute hinged on whether investigating "possible violations of the Civil Obedience Act" was a bona fide law enforcement objective or a pretext for unconstitutional surveillance of the late Beatles singer.

5

See id. Here, by contrast, there can be no doubt that DHS compiled George Gibney's A-File for legitimate law enforcement and adjudicative purposes. Exemption 7(C) is in play.

### 2. Balancing

Because "the standard for evaluating a threatened invasion of privacy interests resulting from the disclosure of records compiled for law enforcement purposes is somewhat broader than the standard applicable to personnel, medical, and similar files," any information properly withheld under Exemption 7(C) will also be properly withheld under Exemption 6.[5] See U.S. Dep't of Justice v. Reporters Comm. For Freedom of Press, 489 U.S. 749, 756 (1989); Gosen, 75 F. Supp. 3d at 286-87. The only public interest that matters is how disclosure will shed light "on an agency's performance of its statutory duties or otherwise let citizens know what their government is up to." U.S. Dep't of Defense v. Fed. Labor Rel. Auth., 510 U.S. 487, 497 (1994) (internal quotation marks omitted). So information for information's sake will not do. What is more, "the identity of the requesting party has no bearing" under the FOIA, so the rights of the press are "no different" from those of anyone else. Reporters Comm., 489 U.S. at 771.

### a. Private Interest

The FOIA protects an "individual's control of information concerning his or her person." Reporters Comm., 489 U.S. at 763. That includes "criminal history that may have been wholly forgotten," even if scattered bits and pieces are in the public domain. Id. at 764-771. The FOIA therefore protects criminal rap sheets, given the "vast difference" between information that could only be found "after a diligent search of courthouse files, county archives, and local police stations throughout the country" and the single computerized "clearinghouse of information" that a rap sheet contains. Id. at 764. At the same time, privacy interests in information fade when members of the general public "already know" about it. See Kowack, 766 F.3d at 1133.

---

[5] Compare 5 U.S.C. § 552(b)(7)(C) (shielding any information that "could reasonably be expected to constitute an unwarranted invasion of personal privacy"), with 5 U.S.C. § 552(b)(6) (shielding only information that "would constitute a clearly unwarranted invasion of personal privacy" (emphasis added)).

6

Gibney finds little shelter under Reporter's Committee. At least as to allegations of sexual abuse, his A-File is no "compilation of otherwise hard-to-obtain information." See Reporter's Committee, 489 U.S. at 764. Anyone who bothers Googling his name can get their hands on the sordid details of his alleged crimes. Anyone itching to know more can read Deep Deception: Ireland's Swimming Scandals, a 2009 book by award-winning journalist Justine McCarthy.[6]

So like the third parties in Kowack, Gibney has "no privacy interests" in preventing disclosure of the widely known allegations swirling around him. See 766 F.3d at 1133. And without a privacy interest, there can be no invasion of personal privacy, let alone an unwarranted one. See id.; Nat'l Archives, 541 U.S. at 164-66 (addressing whether third parties had any privacy interest in withheld information before reaching balancing test). Accordingly, DHS may not withhold under Exemption 6 or 7(C) portions of documents merely reciting criminal allegations against Gibney.[7]

That said, the public does not have easy access to information about Gibney's past addresses, salary history, and – most relevant here – immigration decisions made by DHS. Gibney retains a privacy interest in such information.

### b. Public Interest

When "there is a privacy interest protected by" the FOIA and the requester asserts a public interest in showing – as here – "that responsible officials acted negligently or otherwise improperly in the performance of their duties," he must "produce evidence that would warrant a belief by a reasonable person that the alleged [g]overnment impropriety might have occurred." Nat'l Archives, 541 U.S. at 174 (emphasis added); see also Prudential Locations LLC v. U.S. Dep't of Housing & Urban Dev., 739 F.3d 424, 433 (9th Cir. 2013).

Muchnick has made that showing. Charges against Gibney came to light no later than 1993. See Muchnick Decl. (dkt. 17-1) Ex. C. In 1994, the Irish Supreme Court put an end to

---

[6] Paperback copies are $18.95 on Amazon.com.

[7] Even if Gibney retained some scintilla of a privacy interest in preventing these allegations from being disclosed anew, the public interest would outweigh it. See Part III.B.2.b.

7

the case – not for lack of evidence, but because the statute of limitations had run. See id. This was no secret. But it did not stop American authorities from allowing Gibney to enter the United States and remain here ever since. See id. So although the information Muchnick seeks "is tied solely to one individual," Mot. at 9, much of it sheds light on multiple decisions by multiple DHS personnel.[8] It details what they knew about Gibney's past and when they knew it. Those details shed light on DHS's performance of its statutory duties and most certainly lets citizens know "what their government is up to." See Dep't of Defense, 510 U.S. at 497 (internal quotation marks omitted).[9] And given Gibney's past, it is enough to "warrant a belief by a reasonable person" that – perhaps – more should have been done. See Nat'l Archives, 541 U.S. at 174.

Hunt v. F.B.I., 972 F.2d 286 (9th. Cir. 1992), is not to the contrary. There, the requester alleged that a female FBI agent used sexual favors to induce him to waive his right to counsel and plead guilty. Id. at 288. He wanted the FBI to hand over its investigation file. Id. at 287. The Ninth Circuit refused him, reasoning that the agent's privacy interests outweighed the public interest in disclosure. Id. at 287-88. The plaintiff sought only a "single file" with information "about one particular [FBI] agent," which the court held would not "shed any light on whether all such FBI investigations are comprehensive or whether sexual misconduct by agents is common." Id. at 288-89. Furthermore, the file detailed a "thorough investigation" into the allegations and "contained credible evidence" that the misconduct had not occurred. Id. at 289. On the other side of the scale, the allegations were "lewd," "highly personal," and not widely known. Id. at 288.

This is a different case. For a start, the privacy interests at stake here are lower than in Hunt. The world already knows about the sexual abuse allegations facing Gibney, lewd as

---

[8] DHS does not invoke Exemption 5, which protects pre-decisional "inter-agency or intra-agency memorandums," 5 U.S.C. § 552(b)(5), to encourage "candid disagreements and give-and-take within the federal bureaucracy," James T. O'Reilly, Federal Information Disclosure § 15:16 (Summer 2016). See Mot. at 4-5. Even if it had, the argument would fall flat because none of the documents contain pre-decision mental impressions of agency personnel. See Coastal States Gas Corp. v. Dep't of Energy, 617 F.2d 854, 866 (D.C. Cir. 1980).

[9] The same cannot be said for things like fingerprint forms, addresses, salary history, and the like. DHS may redact those pieces of information.

8

they are. And although he has a privacy interest in DHS immigration decisions, the public has a strong interest in understanding how and why their government allowed a man with a far-worse-than-checkered past (and perhaps present) to stay here for more than two decades. In other words, the allegations here are far better substantiated than those in Hunt – and with them the claim of possible government misfeasance.

This case is also quite different from the four D.D.C. decisions that DHS calls "Similar Alien File Cases." See Mot. at 15. Gosen and Mezerhand de Schnapp – which shared essentially identical facts – sided with the government because Exemptions 6 and 7(C) were used "to redact only names and some identifying information." See 75 F. Supp. 3d at 289-90 (emphasis added); 67 F. Supp. 3d at 103-104. The redacted information "simply" shed no light on whether USCIS had negligently delayed asylum applications, something that neither court held was an insufficient public interest under the FOIA. See 75 F. Supp. 3d at 289-90; 67 F. Supp. 3d at 103-104. Rojas-Vega and Iswele concerned similarly uninteresting identifying information and ought else. See 132 F. Supp. 3d 11, 19-20 (D.D.C. 2015); 85 F. Supp. 3d 337, 358-59 (D.D.C. 2015). So although those cases dealt with A-Files, the similarities end there.

### C. Exemption 7(E)

As already discussed, DHS compiled everything in Gibney's A-File "for law enforcement purposes." See supra Part III.B.1. And under Exemption 7(E), DHS does not have to disclose any information that would reveal "techniques and procedures for law enforcement investigations or prosecutions" – full stop. See 5 U.S.C. § 552(b)(7)(E). DHS may also withhold information that reveals "guidelines" for enforcement – but only if doing so would "risk circumvention of the law." See Hamdan v. U.S. Dep't of Justice, 797 F.3d 759, 778 (9th Cir. 2015).

As an initial matter, DHS has properly redacted documents that reveal the databases USCIS uses, "coded information," "biometric checks," and other technical information. See Reply at 6. Those are law enforcement "techniques" under Exemption 7(E). See Mezerhand

9

de Schnapp, 67 F. Supp. 3d at 100-02.  The real fight here is whether DHS must disclose what those "techniques" revealed, namely the sexual abuse accusations.  See id.

DHS argues that doing so would reveal "the specific types of information sought by immigration officials in conducting background checks," and therefore that disclosure would be inappropriate.  Mot. at 11 (quoting Supp. Vaughn Index).  That argument proves too much.  Cf. Rosenfeld v. U.S. Dep't of Justice, 57 F.3d 803, 815 (1995) ("If we were to follow such reasoning, the government could withhold information under Exemption 7(E) under any circumstances . . . simply by saying that the 'investigative technique' at issue is . . . the application of the practice to particular facts . . .).  So long as DHS redacts how it obtained information about Gibney, disclosing what if found out would not disclose a law enforcement technique, procedure, or guideline.  That is all the more true given that the allegations here are no secret.

## IV.    Conclusion

The Court is prepared to order DHS to disclose substantive information contained in the A-File about Gibney's alleged crimes, decisions about immigration benefits he sought, and the dates any documents containing such information were created.  DHS could still withhold identifying information about third parties other than Gibney, as well as Gibney's past addresses, salary history, Alien number, and the like.  It could also still withhold portions of documents revealing the investigative procedures it used to obtain information about Gibney, but not the information itself.

Based on that analysis, DHS has properly redacted or withheld in full some documents but not others.  The Court has separated those two categories and highlighted what DHS would need to disclose to comply with this tentative order.  If the parties cannot reach a resolution, the Court will issue a final order on the motion for summary judgment in due course.

**IT IS SO ORDERED.**

Dated: November 2, 2016



_____

CHARLES R. BREYER
UNITED STATES DISTRICT JUDGE